619 F.2d 576
 56 A.L.R.Fed. 488, 1980-1 Trade Cases 63,274
 CITY OF CLEVELAND, Plaintiff-Petitioner,
v.
Honorable Robert B. KRUPANSKY, United States District Judge
For The Northern District of Ohio, Eastern
Division and The Cleveland Electric
Illuminating Company, Respondents.
 No. 80-3168.
 United States Court of Appeals,
Sixth Circuit.
 March 25, 1980.
May 6, 1980.
 
 William B. Norris, Neil K. Evans, Lee I. Fisher, Thomas E. Wagner, Director of Law, City of Cleveland, Cleveland, Ohio, for plaintiff-petitioner.
 Robert B. Krupansky, Cleveland, Ohio, pro se.
 Before WEICK, Circuit Judge, and PHILLIPS and PECK, Senior Circuit Judges.
 PER CURIAM.
 
 
 1
 The City of Cleveland (City) has filed in this court a Petition containing 106 pages For Writ Of Mandamus To Compel Disqualification Of The Honorable Robert B. Krupansky, United States District Judge For The Northern District Of Ohio, Eastern Division (Judge). Simultaneously therewith, the City filed three large volumes of Exhibits which it alleges provides the factual basis for the Petition.
 
 
 2
 The City also filed a motion to consolidate this mandamus petition to compel disqualification of the Judge with a previous petition for mandamus it filed against him in this court to compel pretrial discovery being No. 80-3146 on the docket of the court. We see no need to consolidate the cases since we had previously prepared our opinion (although it had not been finalized) denying the writ in No. 80-3146 and we therefore deny the motion to consolidate. The Judge has advised the clerk of our court that the scheduled trial of the antitrust case on March 24, 1980 will be postponed to await the decisions in both mandamus actions.
 
 
 3
 At the outset, it should be noted that the City's Motion To Disqualify was not filed until after the complex antitrust suit had been pending before the Judge since the time it was filed on July 1, 1975, or for 4 years and 9 months during which time, as shown by the three large volumes of exhibits, a multitude of proceedings had been conducted before the Judge resulting in many rulings, memorandum opinions and orders. It does seem to us that the City waited until a long time in order to discover that the Judge was biased.
 
 
 4
 The Motion To Disqualify pursuant to 28 U.S.C. § 455 and the Fifth Amendment to the United States Constitution, expressly states that it was based upon "the attitude, demeanor, rulings and other written opinions during the years that this action has been pending." (emphasis added.) This in our opinion does not state a case for mandamus as all of it could have and undoubtedly did occur in judicial proceedings.
 
 
 5
 The City in its Memorandum in Support of Motion To Disqualify, which was filed about 11 days before the scheduled trial, March 10, 1980, and after the City had sought and secured five prior continuances and the City undertook to excuse the long delay by stating:The City was in no position to make a final determination of the fact that Judge Krupansky's lack of impartiality would impinge upon the City's right to a fair trial until Judge Krupansky denied the City's collateral estoppel motion in January 1980, and, in February 1980, the City's motion for limited discovery and the City's requested leave to file an amended complaint.
 
 
 6
 Memorandum in Support of Motion to Disqualify at p. 9. (emphasis supplied).
 
 
 7
 The Judge, in an exhaustive Memorandum Opinion and Order containing 25 pages filed on March 8, 1980, undertook to give careful consideration to all of the issues raised by the City in its Motion To Disqualify and supporting papers and applied the applicable legal precedents in ruling on the legal sufficiency of the disqualification request. He stated "all facts stated with particularity are to be taken as true," but "(a)ssertions merely of a conclusionary nature are not enough nor are opinions or rumors." United States v. Haldeman, 559 F.2d 31, 131 (D.C.Cir. 1976), cert. denied, 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977).
 
 
 8
 He considered the relationship between the two statutory provisions 28 U.S.C. § 144 and the subsequently enacted Section 455 and held that they must be construed in pari materia. In so holding, he was supported by ample authority. In re International Business Machines Corporation, 618 F.2d 923 (2nd Cir. 1980); Davis v. Board of School Commissioners of Mobile County, 517 F.2d 1044 (5th Cir. 1975), United States v. Olander, 584 F.2d 876, 882 (9th Cir.). These cases also hold that disqualification under Section 455(a) must be predicated as previously under Section 144, upon extrajudicial conduct rather than on judicial conduct.
 
 
 9
 In International Business Machines Corporation, supra, the conduct of the District Judge in handling a complex antitrust case was similar in many respects to the conduct of the Judge in the present case particularly in respect of ruling so frequently against I.B.M. and his attitude toward counsel for I.B.M. The Second Circuit nevertheless held that "the rulings and conduct of the trial judge complained of here are legally insufficient to warrant recusal under Title 28 §§ 144, 145 or under the due process clause of the Fifth Amendment of the United States Constitution."
 
 
 10
 The Judge also applied the correct rule in passing upon affidavits which were conclusionary or constituted merely opinions.
 
 
 11
 The Judge further held that the Motion To Disqualify was not timely filed, relying on International Business Machines Corp., supra, and other cases.
 
 
 12
 It is obvious that the City was relying principally upon pretrial discovery orders of the judge as indicated in its first mandamus action.
 
 
 13
 Finally, it should be observed that we are reviewing the Judge's ruling denying the City's Motion To Disqualify not upon a direct appeal but in a mandamus proceeding. We stated the applicable rules governing mandamus proceedings in the City's Mandamus Petition To Compel Discovery, No. 80-3146.
 
 
 14
 In Albert v. United States District Court For The Western District of Michigan, 283 F.2d 61 (6th Cir. 1960), we held that mandamus was not the proper remedy to compel a judge to recuse himself. In the consideration of the sufficiency of an affidavit of bias and prejudice, the judge performs a judicial and not a ministerial act. We stated: "Before petitioner may resort to the extraordinary writ of mandamus, he must establish that he has a clear and certain right and that the duties of the respondent are ministerial, plainly defined and peremptory." This is certainly not the situation here where the orders and opinions involved the exercise of discretion. Mandamus does not lie to compel a judge of an inferior court to reverse a decision made by him in the exercise of legitimate jurisdiction. The order entered by a District Judge refusing to disqualify himself is not reviewable upon appeal until a final judgment has been entered in the case. Collier v. Picard, 237 F.2d 234 (6th Cir. 1956). No final judgment has been entered in the antitrust case pending in the District Court.
 
 
 15
 We followed Albert in United States v. Battisti, 486 F.2d 961, 964 (6th Cir. 1973). These decisions are binding on us.
 
 
 16
 In Kelley v. Metropolitan County Board of Education, 479 F.2d 810 (6th Cir. 1973) which was an appeal from an order entered in a school desegregation case in which a judge recused himself, we held that an order of recusal is within the discretion of the judge. Finding in the record no abuse of discretion, if the appeal is considered as such, it is dismissed or if the appeal is considered as a petition for mandamus, it is denied. Circuit Judge McCree wrote a concurring opinion in which he considered the duties of a judge in determining a motion for recusal.
 
 
 17
 In Oliver v. Kalamazoo Board of Education, 508 F.2d 178 (6th Cir. 1974), cert. denied, 421 U.S. 963, 95 S.Ct. 1950, 44 L.Ed.2d 449 (1975), there was a direct appeal in a school desegregation case in which an affidavit of bias was filed against the District Judge and he declined to recuse himself for alleged misconduct just as objectionable and maybe more so than that charged against the Judge in the present case. A panel of our court sanctioned it as judicial and not involving personal bias. While this recusal was sought under § 144, we applied the same principle to one involving § 455(a) in Woodruff v. Tomlin, 593 F.2d 33, 44 (6th Cir. 1979), which ruling was not disturbed in the en banc hearing reported in 616 F.2d 924 (1980).
 
 
 18
 The Judge in his memorandum opinion and order closed with the statement:
 
 
 19
 "The City identifies no personal prejudice and bias on the part of this Court because none exists. United States v. International Business Machines Corp., supra, 475 F.Supp. 1372 at 1391 (S.D.N.Y.). To favorably entertain the City's motion would, under the facts and circumstances presented, constitute an entirely unwarranted abdication of judicial responsibility, and, in the considered opinion of this tribunal, delay ultimate resolution of this cause for an additional two to four years.
 
 
 20
 Accordingly, the City's request that this Court disqualify itself pursuant to 28 U.S.C. § 455 and the Fifth Amendment to the United States Constitution is hereby denied. The Order staying the proceeding of this cause issued on February 29, 1980, shall be terminated as of March 19, 1980, and the trial of this matter shall proceed promptly on March 24, 1980, at 9:15 a. m.
 
 
 21
 IT IS SO ORDERED.
 
 
 22
 Memorandum and Order p. 25.
 
 
 23
 Chief Justice Burger in his Annual Report On The State of the Judiciary, February 3, 1980, made pertinent comments on the misuse and abuse of pretrial judicial process and suggested that judges must take a more active role in the management of litigation which is exactly what Judge Krupansky was endeavoring to do in the present case.
 
 The Chief Justice stated:
 Misuse of Judicial Process
 
 24
 One factor which contributes to the high cost of legal services is the misuse and abuse of pretrial judicial processes. Yet we must not be too critical of lawyers for using the mechanisms permitted by statute or court rules. Roscoe Pound pointed out, nearly three-quarters of a century ago, that the very nature of our adversary system invites abuses. The responsibility for control rests on both judges and lawyers. Where existing rules and statutes permit abuse, they must be changed. Where the power lies with judges to prevent or correct abuse and misuse of the system, judges must act.
 
 
 25
 Litigation does not manage itself. Within reason, trial judges must take a more active role in the management of litigation by enforcing schedules and limiting free-wheeling pretrial activities. Sanctions must be used to prevent or penalize abuses and judges are making greater use of this kind of control.
 
 
 26
 The petition for a writ of mandamus is dismissed.