**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted April 2, 2021[*]
Decided April 13, 2021

**Before**

DIANE S. SYKES, *Chief Judge*

MICHAEL S. KANNE, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

No. 20-2166

WILLIAM HERMAN VIEHWEG,
    *Plaintiff-Appellant,*

*v.*

SIRIUS XM RADIO, INC.,
    *Defendant-Appellee.*

Appeal from the United States District Court for the Central District of Illinois.

No. 17-3140

Richard Mills,
*Judge.*

**O R D E R**

William Herman Viehweg sued Sirius XM Radio for defamation, claiming that during a phone call it had falsely accused him of identity theft. Because the transcript of the call showed that Sirius had not defamed Viehweg, the district court entered summary judgment for Sirius. On appeal, Viehweg challenges that decision and some earlier orders. But because no evidence supports a claim of defamation and the district court did not commit reversible error in its other rulings, we affirm.

---

[*]We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

This case arose after Viehweg renewed his subscription for Sirius's satellite-radio service around the same time that another customer with the same first and last name, and a nearly identical middle name, also did so. Viehweg has a distant relative named William Harry Viehweg ("Bill"), and Bill is married to Bridget Viehweg. Bill and Bridget were already Sirius customers when they bought a new car that came with a free Sirius subscription. Sirius later called Bridget to see if she wanted to continue the subscription for the new car at the end of her free trial. She did, and Sirius then consolidated all three accounts. It did not notify Viehweg, Bridget, or Bill that it had consolidated the three accounts into one.

After the consolidation, Bridget and Viehweg noticed problems with their service. They each saw that an unknown car was connected to their accounts and that information such as their phone numbers, credit card numbers, and addresses was incorrect. Over the course of three days, they separately tried to correct these issues through customer service, but without success. Instead, at times they both lost radio service, and once Sirius charged Bridget for Viehweg's subscription.

On the third day of these efforts, June 10, 2016, Bridget called Sirius. She asked how another person could be controlling her account. Based on the call's transcript, Sirius explained that "William" (first name only) could have altered the account by using various available items of identification, such as an email, address, account number, or car-radio identifier. Bridget decided that "William" was an unknown person who had wrongly obtained her address, credit-card number, and email. Sirius offered to investigate and confirmed that she had the "option" of filing a police report. Bridget and Bill later called the local police to report identity fraud. The police eventually contacted Viehweg and realized that the problem was likely caused by Sirius having two nearly identically named customers. The police arranged for Viehweg, whom they never arrested or charged with a crime, to contact Bridget.

Dissatisfied with Sirius, Viehweg sued it for defamation, alleging that it told Bridget on June 10 that he had stolen her identity. Judge Sue E. Myerscough initially presided, but she recused herself without explanation, and Judge Richard Mills took over. Sirius later moved for summary judgment, and Viehweg filed a response, which Sirius moved to seal because it included exhibits with trade secrets. Judge Mills granted the motion but directed the clerk to seal only the exhibits and any references to them. Because of technical limits, the clerk sealed Viehweg's entire filing. Viehweg then filed a series of motions. He moved to unseal his response, to have Judge Mills recused as biased against Viehweg, and to hold Sirius in contempt. The contempt request itself

asserted several grounds: Sirius had not reimbursed Viehweg for the cost of serving process; it had not preserved and produced documents properly; it had wrongly moved to seal his summary-judgment filing; and it had interfered with his right to self-representation. Judge Mills denied recusal, did not unseal the response, summarily denied the request for contempt, and entered summary judgment for Sirius.

On appeal, Viehweg first contests the recusal decisions. He argues that Judge Myerscough had a duty to remain on his case. But a plaintiff has no entitlement to the continued exercise of jurisdiction by a particular judge, so long as some judge hears his case. *Hampton v. City of Chicago*, 643 F.2d 478, 479–80 (7th Cir. 1981). Viehweg's case proceeded without Judge Myerscough, so we do not disturb her recusal decision. See *id.* at 480 n.7. Viehweg also argues that Judge Mills should have recused himself for actual or apparent bias. See 28 U.S.C. § 455(a), (b)(1). To obtain recusal, Viehweg had to show that a reasonable observer would find Judge Mills was biased or partial. See *United States v. Barr*, 960 F.3d 906, 920 (7th Cir. 2020); *United States v. Simon*, 937 F.3d 820, 826 (7th Cir. 2019). Viehweg urges that Judge Mills's ruling on summary judgment and on sealing his opposition establish that Judge Mills was biased against him as a pro se litigant. "But judicial rulings alone are almost never a valid basis for a recusal" unless they show an "extrajudicial" motivation for bias or partiality. *Barr*, 960 F.3d at 920 (citing *Liteky v. United States*, 510 U.S. 540, 555 (1994)). Judge Mills's decisions cited legitimate reasons—the lack of evidence and trade secrets—and did not refer to irrelevant factors, such as Viehweg's status as a pro se litigant.

Viehweg next challenges summary judgment for Sirius on his defamation claims, but that ruling was appropriate. Viehweg observes correctly that false accusations of theft are defamatory per se. See *Knafel v. Chicago Sun-Times, Inc.*, 413 F.3d 637, 639 (7th Cir. 2005). But Viehweg has offered no evidence to support his claim that Sirius accused him of theft on June 10. The transcript of the call shows that Sirius did not accuse Viehweg of identity theft (or any crime). Rather, it suggested that "William"—it gave no middle or last name—had used identifying information available to him to alter the account. When Bridget said that her husband did not make the changes, Sirius did not respond that it was Viehweg, let alone that he had stolen credentials to do so; it merely offered to investigate the matter and said that Bridget's plan to file a police report was "her option." Viehweg does not dispute that this transcript refutes his claims. Instead, he insists that Sirius modified the transcript, deleted an undisclosed and inculpatory second call, told Bridget to call the police, and bribed Bridget to lie about it. But because Viehweg offered no evidence supporting his speculations, summary

judgment was proper. See *Waldon v. Wal-Mart Stores, Inc.*, 943 F.3d 818, 823 (7th Cir. 2019).

Viehweg also argues that the district court should have held Sirius in contempt, but the court rightly denied that motion. To be held in civil contempt, a person must have violated an unambiguous court order. *S.E.C. v. Hyatt*, 621 F.3d 687, 692 (7th Cir. 2010). Viehweg first points to Sirius's motion to seal its trade secrets and its requests that he use the court's electronic filing system, which he views as attempts to "oppress" his right to self-representation. But these actions did not violate a court order. Next, Viehweg argues that Sirius violated court orders that required it to refund Viehweg for his costs in serving process and to produce recordings without removing credit-card data. But the court had already ruled that Sirius did not violate these orders: Sirius sent Viehweg a check for the service costs, and a third party, not Sirius, had removed the credit-card data before Sirius acquired the recordings. Because the court had already addressed these issues, and Viehweg did not present new evidence of noncompliance, the court reasonably denied his motion. See *id.*; *Sigsworth v. City of Aurora*, 487 F.3d 506, 512 (7th Cir. 2007). Finally, Viehweg contends that the district court needed to sanction Sirius for lying and attempting to obstruct justice. But Viehweg provided no evidence of wrongdoing, nor was misconduct apparent from the record, so the court reasonably did not impose sanctions. See *Evans v. Griffin*, 932 F.3d 1043, 1047 (7th Cir. 2019).

We have considered Viehweg's other arguments, and none has merit.

AFFIRMED